**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| **WILLIAM M. DANIELS,** | ) |
|  | ) |
| **Appellant,** | ) |
|  | ) |
| **v.** | )    **Civil Action No. 11-11688-DJC** |
|  | ) |
| **WARREN E. AGIN,** | ) |
| **duly-appointed Chapter 7 Trustee of** | ) |
| **the Estate of William M. Daniels,** | ) |
|  | ) |
| **Appellee.** | ) |

_____)

**Casper, J.**                                               **September 30, 2012**

<u>**MEMORANDUM OF DECISION**</u>

**I.     Introduction**

Debtor/Appellant William M. Daniels ("Daniels") now appeals three orders of the
bankruptcy court allowing the various motions of Trustee/Appellee Warren E. Agin, duly appointed
Chapter 7 trustee of the estate of William M. Daniels (the "Trustee"), and William K. Harrington,
the U.S. Trustee.  In the first of these appeals, Daniels appeals the granting of summary judgment
to the Trustee (and its subsequent denial of his motion to reconsider and stay that order and his
motion to amend the discovery plan) on its turnover motion on the grounds that:  1) the bankruptcy
court erred in ruling that his profit sharing plan was not exempt from the bankruptcy estate,
particularly in light of an allegedly favorable determination of same by the Internal Revenue Service
("IRS"); 2) the bankruptcy court erred in finding that the individual retirement accounts ("IRAs"),
created entirely with proceeds from the non-exempt profit sharing plan, were properly considered

1

part of the bankruptcy estate; and 3) the bankruptcy court's finding that Daniels had failed to disclose and did conceal the two IRAs was clearly erroneous.  In the second of his appeals, Daniels appeals the bankruptcy court's denial of his motion under Fed. R. Civ. P. 60(b) for relief from the summary judgment ruling.  In support of this appeal, Daniels contends that his counsel's role in filing his bankruptcy schedules and motions, not his own actions, lead to the nondisclosure of the IRAs and such information amounted to both excusable neglect and newly discovered evidence and the bankruptcy court erred in denying him relief under Fed. R. Civ. P. 60(b).   Finally, in his third appeal, Daniels appeals the bankruptcy court's revocation of the discharge of his debts.  The three appeals have now been consolidated before this Court and the parties have submitted extensive briefing regarding each of the issues raised in the appeals.  Since this Court concludes that the bankruptcy court did not err in its rulings of law and its findings of fact were not clearly erroneous for the reasons stated below, each of the rulings below in each of the three appeals is AFFIRMED and this (consolidated) matter is DISMISSED.

II.     **Factual Background**

   **A. Pre-Bankruptcy Filing**

   Daniels is a broker of commercial fishing boats.  In re Daniels (Agin v. Daniels), 452 B.R. 335, 340 (Bankr. D. Mass. 2011) ("Daniels I").  In or about 1988, Daniels purchased a prototype pension plan from Massachusetts Mutual Life Insurance Company ("MassMutual")  and tailored such plan to create the "William M. Daniels Profit-Sharing Plan" (the "Profit Sharing Plan").  Id. Daniels appointed himself as the Trustee, Administrator and employer of the Profit Sharing Plan, and has at all times been the sole participant of the Profit Sharing Plan.  Id.  He manages the Profit Sharing Plan's brokerage account, writes checks from the account and deposits checks in the

account.  <u>Id.</u>

At various times, Daniels received "favorable determination letters" from MassMutual through the IRS regarding the prototype plan stating that the "form of the plan . . . is acceptable under section 401 of the Internal Revenue Code for use by employers for the benefit of their employees." <u>Id.</u> (citation omitted).  Each letter included a qualification that "[The IRS] opinion is not a ruling or determination as to whether an employer's plan qualifies under [Internal Revenue Code] section 401(a).  An employer who adopts this plan will be considered to have a plan qualified under Code section 401(a) provided all the terms of the plan are followed and the eligibility requirements and contribution or benefit provisions are not more favorable for officers, owners, or highly compensation [sic] employees than for other employees." <u>Id.</u> (citation omitted).  MassMutual made no further determination, ruling or representation about the Profit Sharing Plan.  <u>Id.</u>

During the life of the Profit Sharing Plan, Daniels engaged in a number of transactions with family members and associates that resulted in deposits to and withdrawals from the plan's brokerage account.  <u>Id.</u>  Through the Walker Realty Trust ("Realty Trust"), established by Daniels, he bought, developed and leased and sold real estate.  <u>Id.</u>  Pursuant to a Declaration of Trust for the Realty Trust, dated January 15,1986, Daniels's wife was named the sole holder of the entire beneficial interest in the Realty Trust and Daniels as the sole trustee of the Realty Trust.  <u>Id.</u> at 6. In or about December 1988, Debtor's wife assigned her beneficial interest in the Realty Trust to the Profit Sharing Plan.  <u>Id.</u> at 340-41.   Daniels often used funds from the Profit Sharing Plan's brokerage account to pay real estate taxes and other costs associated with the properties held by the Realty Trust or deposited rent checks or other income from the real estate held by the Realty Trust directly into the Profit Sharing Plan's account.  <u>Id.</u> at 341.  He also borrowed money from a different

trust of his wife's to pay for property purchased by the Realty Trust. Id. For ten years, Daniels's son and daughter-in-law leased property held and developed by the Realty Trust, made rental payments directly to Daniels as trustee, and subsequently purchased the property from the Realty Trust. Id. Daniels also engaged the Profit Sharing Plan in transactions with the daughter of Tom Florence, a person who has provided services to the Profit Sharing Plan by managing property owned by the Realty Trust. Id. at 342. In or about 1996, Daniels invested both his personal funds and funds from the Profit Sharing Plan in a business venture, B.I.T.C.O. Id.

Also in 1996, Daniels deposited money from the estate of his late uncle, Maurice Lopes into the Profit Sharing Plan. Id. On or about February 11, 1998, the executrix of the Estate of Maurice H. Lopes ("Executrix") filed suit against both Daniels and his wife in the Probate and Family Court for Barnstable County. Id. The Executrix alleged, *inter alia,* that Debtor had wrongfully taken funds from the bank accounts of his uncle, Mr. Lopes, within days after his death and used such funds for the Daniels's own personal needs. Id. On July 8, 1999, the Probate and Family Court entered judgment in the amount of $238,538.16, in favor of the Executrix and against Daniels and his wife. Id. In 2003, the Massachusetts Appeals Court affirmed the judgment against Daniels and reversed it with respect to his wife. Id. at 342-43.

In or about February 2007, approximately six months prior to filing for bankruptcy protection, Daniels transferred funds totaling $469,894 out of the Profit Sharing Plan into two IRAs. Id. at 343. These IRAs were funded exclusively from the Profit Sharing Plan and owned by Daniels individually. Id.

**B.  Bankruptcy Filings and Proceedings**

On August 8, 2007, the Debtor filed a petition for bankruptcy under Chapter 13. Id. at 10.

Daniels filed his schedules of assets and liabilities and statement of financial affairs (the "Schedules") shortly thereafter with total assets valued at $1,280,314. Id. The Schedules did "not disclose any retirement assets other than the funds held in the Profit Sharing Plan, and the IRAs were not listed on Schedule C or otherwise disclosed in any of [the Schedules]." Id.

On November 1, 2007, the bankruptcy court granted his motion to convert the case from a Chapter 13 proceeding to a Chapter 11 and, on March 3, 2009, allowed his further motion to convert the case to a Chapter 7 proceeding. Id. During the course of the bankruptcy proceeding, Daniels testified at three creditors' meetings, pursuant to 11 U.S.C. § 341. Id. During each, "he confirmed the truth and accuracy of his schedules at the time filed and the time of such meetings." Id. During the span of these meetings, he made only one reference to the IRAs; at the first meeting held on September 25, 2007, in response to a question about whether he was the trustee and only beneficiary in the Profit Sharing Plan, Daniels responded, "[y]es ma'am, which is an IRA, qualified ERISA." Id. The bankruptcy court found that Daniels "did not otherwise disclose existence of the IRAs or the February 2007 transfer of funds from the Profit Sharing Plan to the IRAs." Id. at 344.

On August 31, 2009, the Trustee initiated an adversary proceeding against Daniels, seeking turnover of Daniels's interest in the Profit Sharing Plan to the bankruptcy estate and to enjoin Daniels form withdrawing, using or dissipating any of the funds in the Profit Sharing Plan or from selling or liquidating any property or interests held by the Profit Sharing Plan. Id. At the same time, the Trustee moved for a preliminary injunction seeking the same relief. Id. The bankruptcy court granted the motion for injunctive relief. Id. The bankruptcy court subsequently modified the preliminary injunction order in terms that the parties negotiated. App. at 4.

On March 15, 2010, Daniels filed an expedited motion for partial relief from the preliminary

injunction, seeking the Court's leave for either liquidation or reallocation by which the Profit

Sharing Plan could be reduced in favor of a traditional IRA. Daniels I, 452 B.R. at 344. This

motion did not disclose that he had previously transferred funds from the Profit Sharing Plan to the

IRAs. Id. The bankruptcy court denied the motion. Id.

At or around the same time, in the course of discovery in the adversary proceeding, Daniels's

counsel produced documents including six pages of account statements for the IRAs, as well as tax

statements for them mixed in with other documents. Id. On or about April 12, 2010, his counsel

provided to the Trustee's counsel un-signed answers to interrogatories that referred to one of the

IRAs. Id. A day later, Daniels's counsel represented in correspondence to the Trustee's counsel that

he was correcting errors in the answers to interrogatories and purported to strike the reference to that

IRA, stating that it was an IRA and not part of the Profit Sharing Plan. Id. at 344-45.

As a result of the (apparently inadvertent) disclosure of the IRAs, the Trustee filed a new

motion for injunction and turnover of the previously undisclosed IRAs and an order enjoining

Daniels from reducing his interest in those IRAs or other individually held accounts not yet

disclosed. Id. at 345. Simultaneously, the Trustee filed an expedited motion for examination of

Daniels pursuant to Fed. R. Bankr. P. 2004. Id. The bankruptcy court denied the motion for

preliminary injunction and turnover without prejudice, but granted the motion for Rule 2004

examination. Id.

On March 8, 2011, the Trustee filed a motion for summary judgment on its motion for

turnover of the previously undisclosed IRAs. Id. On April 4, 2011, Daniels filed his opposition to

that motion and filed a cross-motion for summary judgment. Id. The Trustee filed a motion to strike

the late-filed cross-motion for summary judgment as well as its opposition to the cross-motion for

summary judgment.  Id.  On June 16, 2011, after a hearing on the motions,  the bankruptcy court entered its Order and Memorandum of Decision, allowing the Trustee's motion for summary judgment, denying the Trustee's motion to strike and denying Daniels's cross-motion for summary judgment.  Id.

On June 29, 2011, Daniels filed a motion to amend, alter and reconsider judgment, seeking reconsideration of the summary judgment order.  App. at 17.  On July 27, 2011, Daniels filed a motion for stay of judgment and requested emergency determination on the motion.  See App. at 18.  Daniels further filed a motion to amend the discovery plan to allow additional time for discovery in the adversary proceeding.  See App. at 19.  The Trustee opposed all of these motions.  Id.  The bankruptcy court denied Daniels's motion to reconsider, motion for stay of judgment and motion to amend the discovery plan.  App. at 20.

On December 29, 2011, Daniels moved, pursuant to Rule 60(b), for relief from the June 16, 2011 Order.  In re Daniels (Agin v. Daniels), 462 B.R. 356, 358 (Bankr. D. Mass. 2012) ("Daniels II").  In support of this motion, Daniels alleged that his nondisclosure of the IRAs lay at the feet of his prior counsel.  He asserted that he had alerted his prior counsel to certain errors in his filings and the Schedules and pointing to same as both the cause of excusable neglect and newly discovered evidence warranting relief under Rule 60(b).  Id. at 362-63.  In another written decision, the bankruptcy court rejected each of Daniels's arguments and the relief he sought.  Id.  The bankruptcy court also denied Daniels's subsequent motions to reconsider this decision.  D. 36-1 at 41-42.

On November 3, 2011, the U.S. Trustee moved for summary judgment on its petition to revoke Daniels's discharge based upon the bankruptcy's prior ruling granting summary judgment to the Trustee on June 16, 2011.  On January 13, 2012, after hearing, the Bankruptcy court granted

summary judgment and revoked Daniels's discharge under 11 U.S.C. § 727(e)(1). Transcript of Hearing, held on January 13, 2012, In re Daniels, 07-14988-WCH (Harrington v. Daniels, 10-01180-WCH) ("Daniels III"), D. 38 at 131, at 10. The bankruptcy court concluded that its prior findings in connection with its earlier ruling on June 16, 2011 regarding the turnover motion were dispositive of the revocation motion. Id.

## III. Procedural Background

On August 22, 2011, in the lead case, No. 11-cv-11688-DJC, Daniels filed his Notice of Appeal, appealing the Order and Memorandum of Decision of the bankruptcy court (Hillman, Bankr. J.) regarding the turnover motion, entered on June 16, 2011, and the order denying his motion to reconsider, motion for stay of judgment and motion to amend the discovery plan, entered on August 12, 2011. In this appeal, Daniels argues that the bankruptcy court erred by: (1) finding that the February 19, 2009 letter regarding the Profit Sharing Plan was not a favorable determination; (2) finding that he intentionally concealed assets in filing his Schedules; and (3) ruling that the Profit Sharing Plan and the IRAs were not exempt assets. D. 17 at 5.

On February 21, 2012, in a related case, No. 12-cv-10360-DJC, Daniels filed his Notice of Appeal appealing the Memorandum of Decision of the bankruptcy court (Hillman, Bankr. J.), entered on January 5, 2012, denying his motion filed pursuant to Fed. R. Civ. P. 60(b) for relief on the grounds of excusable neglect and newly discovered evidence from the summary judgment order on the turnover motion, entered on June 16, 2011, and the denial of his subsequent motions to reconsider the denial of that motion.

On February 24, 2012, in a related case, No. 12-cv-10364-DJC, Daniels filed his Notice of Appeal appealing the order of the bankruptcy court (Hillman, Bankr. J.), entered on January 13,

2012, revoking his discharge.

All three appeals were consolidated before this Court on March 27, 2012.  3/27/12 docket entry.  After numerous rounds of briefing after consolidation, the Court now addresses the issues raised in each of these appeals, all of which relate to Daniels's bankruptcy petition and related adversary proceedings and the same core of relevant facts.

## IV.     Standard of Review

On appeal, the "district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceeding."  Fed. R. Bankr. P. 8013.  In its review, the district court reviews the bankruptcy court's conclusions of law _de novo_, but must accept its findings of fact unless they were clearly erroneous.  TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995); Fed. R. Bankr. P. 8013.  Accordingly, as to the bankruptcy court's findings of fact, they "are to be set aside only if, on the entire evidence, [the Court is] 'left with the definite and firm conviction that a mistake has been committed.'"  In re Tully, 818 F.2d 106, 109 (1st Cir. 1987) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  "Generally, a debtor's entitlement to a bankruptcy exemption involves a legal question and is reviewed de novo."  In re Wood, 291 B.R. 219, 224 (1st Cir. 2003).

## V.     Discussion

### A.     Daniels's Profit Sharing Plan is Not Exempt

#### 1.     The IRS Did Not Issue a Favorable Determination as to the Profit Sharing Plan

Daniels relies upon a purported favorable determination letter from the IRS regarding the Profit Sharing Plan to argue that the plan is exempt and that the bankruptcy court erred in ruling otherwise.  D. 16 at 15.  This argument fails because, as the bankruptcy court correctly held, "the

February 19, 2009 IRS letter is not a favorable determination letter under section 7803 of the Internal Revenue Code." <u>Id.</u>  Daniels is correct that under the Internal Revenue Code, certain property is exempt from the bankruptcy estate and such property may include retirement funds that are in a fund or account exempt from taxation.  11 U.S.C. § 522(b)(3)(C).  Under 11 U.S.C. § 522(b)(4)(A), retirement funds are presumed exempt under subsection (b)(3)(C) if they are held "in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition." <u>Id.</u>  However, the February 19th letter, by its express terms did not render such opinion.  A "favorable determination letter" indicates whether the terms of the plan "conform to the requirements of [Internal Revenue Code] section 401(a).  A favorable determination letter expresses the IRS's opinion regarding the form of the plan document." <u>Daniels I</u>, 452 B.R. at 347 (quoting IRS Publication 794 (Rev. October 2010), Catalog Number 20630M, available at http://www.irs.gov/irs-pdf/p794.pdf).  This letter did not make a determination that the Profit Sharing Plan was a qualifying plan and was instead limited to one year's tax return and one specific transaction, namely a loan from the Profit Sharing Plan to Daniels's son. <u>Daniels I</u>, 452 B.R. at 348.[1]  As such, the February 19th letter did not constitute a favorable determination by the IRS and

---

[1]On appeal, Daniels relies upon excerpts of the Internal Revenue Manual for further support of his contention that the February 19th letter was a favorable determination.  Assuming that Daniels did not waive this argument by failing to raise it in connection with the summary judgment motion below and assuming that the version of the Manual upon which he now relies is part of the record and properly before this Court–both of which the Trustee disputes (D. 20 at 24-25)–he has failed to show that the procedures described in the Manual regarding an IRS audit and determining the qualification of a plan applied or were followed during the IRS audit of the Profit Sharing Plan's 2006 tax returns and that the conclusion of that audit constituted a determination of qualification of the Profit Sharing Plan.  However, in the absence of such connection and in light of the February 19th letter providing no such determination and drawing a conclusion about the Profit Sharing Plan that was limited to one prohibited transaction,

the bankruptcy court did not err in concluding so.[2]

> 2.    *In the Absence of a Favorable Determination by the IRS, the Profit Sharing Plan Was Not Otherwise Exempt*

In the absence of such a favorable determination, a retirement savings vehicle, such as the Profit Sharing Plan, may still be exempt from the estate if the criteria under 11 U.S.C. § 522(b)(4)(B) are satisfied.  In relevant part,[3] this section of the Code requires that the retirement funds will still be exempt from the estate if the fund is in substantial compliance with the applicable requirements of the Internal Revenue Code or, failing to be in such substantial compliance, the debtor is not materially responsible for that failure.   11 U.S.C. § 522(b)(4)(B)(ii).  Daniels failed to satisfy either of these showings.

The Profit Sharing Plan was not in compliance with the applicable requirements of the Internal Revenue Code and it cannot be reasonably said that Daniels was not materially responsible

---

Daniels's argument, even on this newly raised basis, still fails.  See also Dickow v. United States, 654 F.3d 144, 153 n. 8 (1st Cir. 2011) (observing that the Internal Revenue Manual does not give the debtor any additional substantive rights and noting that the provisions of the Manual "do not have the force and effect of law")(internal citation omitted).

[2]For this reason, Daniels's reliance on In re Youngblood (Youngblood v. Federal Deposit Ins. Corp.), 29 F.3d 225, 229 (5th Cir. 1994) is misplaced.  Youngblood stands for the proposition that a bankruptcy court should defer to the IRS in determining whether a retirement plan is qualified under the Internal Revenue Code.  Id.  However, since, as discussed, there was no favorable determination by the IRS, there was no IRS opinion for the bankruptcy court to defer to and the Fifth Circuit's concerns about deferring to the expertise of the IRS in tax matters and not "invit[ing] frequent, unseemly, conflicting decisions between the state court and bankruptcy court, and the IRS" are not implicated here.  Id.; see In re Plunk, 481 F.3d 302, 307 (5th Cir. 2007) (discussing and distinguishing Youngblood and concluding that when "disqualifying events" occur after the IRS has last determined that a plan is qualified, "a court may . . . determine that a plan is no longer qualified based on those events").

[3]Section 522(b)(4)(B) also requires that there be no prior determination that the Profit Sharing Plan is not exempt.  There is no evidence in the record that there was such a contrary determination by the IRS and neither party suggests so here.

for that noncompliance.  A profit sharing plan created and operated under the Code is considered a qualified plan not subject to taxation. 26 U.S.C. § 401.  However, the Internal Revenue Code sets certain limitations on the persons with whom the trustee of a tax-exempt profit sharing plan can make transactions.   That is, there are "prohibited transactions" made by "disqualified persons" in regard to a profit sharing plan that are subject to taxation, and, therefore, the profits of same are not exempt from the bankruptcy estate. 26 U.S.C. § 4975.  Disqualified persons include the fiduciary (here, Daniels, who exercised discretionary authority and control over the management of the Profit Sharing Plan and the management or disposition of its assets), persons providing services to the Profit Sharing Plan (here, Florence, who managed certain properties owned by the Realty Trust) and family members of any disqualified person (here, Daniels's wife, son, daughter-in-law and other relatives and Florence's daughter). 11 U.S.C. § 4975(e)(2), (3).  Prohibited transactions include, but are not limited to, the sale, exchange or leasing of any property,  the loan of money or extension of credit, furnishing of goods, services or facilities between such plan and a disqualified person; the transfer to or use by or the benefit of the income or assets of such plan to a disqualified person; actions by a disqualified person who is a fiduciary who deals with the income or assets of the plan "in his own interest or for his own account" or the receipt of any consideration by same for his own personal account from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.   26 U.S.C. § 4975(c).

Against this backdrop, the history of the Profit Sharing Plan, actively managed and administered by Daniels, is a history of prohibited transactions by disqualified persons.  The bankruptcy court properly found that "all real estate sales and leases between the Profit Sharing Plan and [Daniels's] son, daughter-in-law, and Mr. Florence's daughter were prohibited transactions."

<u>Daniels I</u>, 452 B.R. at 349.  The prohibited transaction included the loan to Daniels's son that the IRS had been investigating when it issued the February 19, 2009 letter upon which Daniels so heavily relies.  In fact, in that letter, the IRS found that this transaction was a "prohibited transaction" and the son a "disqualified person" which lends further support to the bankruptcy court's findings regarding the real estate transactions between the Profit Sharing Plan and the other various disqualified persons.  <u>Id.</u> at 349 n. 113.  Moreover, Daniels, as a fiduciary of the Profit Sharing Plan, engaged in a number of transactions that were "in his own interests or for his own account," including, but not limited to,  the assignment of his wife's interest in the Realty Trust to the Profit Sharing Plan which made him both the trustee and sole beneficiary of the Realty Trust and his investment of assets from the Profit Sharing Plan in the B.I.T.C.O. business venture in which he was also individually invested.  <u>Id.</u> at 350.  For all of these reasons, the bankruptcy court's conclusion that Daniels "has abused the profit sharing plan form and the consequence is that the funds held therein may not be exempted from the bankruptcy estate," <u>id.</u> at 351, was not error.

### B.      The IRAs are Also Not Exempt

Since funds that are subject to taxation remain subject to same when they are moved to an IRA, <u>In re Swift</u>, 124 B.R. 475, 485 (Bankr. W.D. Tex. 1991); <u>In re Banderas</u>, 236 B.R. 837, 840 (Bankr. M.D. Fla. 1998), the two IRAs are not exempt because they were funded by the Profit Sharing Plan, which is non-exempt.[4]  However, even if the IRAs were otherwise exempt, the

---

[4]The case law upon which Daniels relies on this point does not compel a different result. Although funds held in properly established and disclosed IRAs are entitled to exempt status, <u>Rousey v. Jacoway</u>, 544 U.S. 320, 333-34 (2005), non-exempt funds, such as those for the Profit Sharing Plan, rolled into IRAs, do not become exempt.

bankruptcy court correctly concluded that Daniels could not claim such exemption since had failed to disclose the existence of these assets.  The bankruptcy system depends on the honesty and candor of debtors in identifying their assets.  Accordingly, it is well settled that "[i]f a debtor intentionally conceals or fails to disclose estate property, the debtor will be barred from claiming such property as exempt, even if the property would have been exempt had it been properly scheduled and claimed."  In re Wood, 291 B.R. at 226.  The record here evidences both nondisclosure and concealment of the IRAs.  Specifically, the bankruptcy court found:

> The Debtor [Daniels] not only failed to list the IRAs on his [S]chedules, but also failed to disclose existence of the IRAs at three meetings of creditors, an examination pursuant to Federal Rule of Bankruptcy Procedure 2004, in various pleadings and motions, and in numerous depositions, hearings, and discovery requests. Furthermore, in the Expedited Motion for Partial Relief, the Debtor moved for authority to either liquidate or "re-allocat[e]" funds from the Profit Sharing Plan into IRAs when in fact he had already done so approximately six months prior to filing his bankruptcy petition.  Rising above a failure to disclose, the Debtor and Debtor's counsel actively misrepresented material facts both in the Expedited Motion for Partial Relief and in a hearing on the matter.  These actions do not characterize a mere "mistake."  Rather, they signify a pattern of bad faith concealment that spans the entire three and a half years of the Debtor's bankruptcy case.

Daniels I, 452 B.R. at 352 (footnotes omitted). This finding was well supported by the record and was not clearly erroneous.  Moreover, the bankruptcy court's ruling that Daniels was not entitled to claim an exemption in the IRAs was also not error.

### C.    The Bankruptcy Court's Finding that Daniels Failed to Disclose and Concealed Assets in His Schedules Was Not Clearly Erroneous

For all of the reasons stated above, the bankruptcy court's finding that Daniels had failed to disclose and had concealed the IRAs was not clearly erroneous.  Without repeating the discussion above, the Court notes that there was ample evidence to support this finding.  To begin, Daniels failed to list the IRAs on his Schedules.  Moreover, Daniels had multiple opportunities in filings and

appearances before the bankruptcy court to disclose the existence of the IRAs and failed to do so.

At minimum, Daniels's actions showed a reckless disregard for the truth. In re Tully, 818 F.2d at 110-111 concerning the denial of discharge, is instructive here. There, the First Circuit affirmed the denial where the debtor was intimate with the nature of three significant assets in his original schedules, omitted two of them in the first amended schedules, later after having been grilled at the creditors' meeting, had disclosed the second, but never the third. Id. at 110. Moreover, the debtor's attempt to explain away the omissions, including, like Daniels, laying blame on his counsel, were of no aid since "these self-serving lamentations were, by and large, suspect." Id. The court affirmed where there was ample evidence in the record to support the bankruptcy court's ruling that the debtor exhibited "reckless indifference to the truth." Id.

Such reckless indifference to the truth was a sufficient showing here to conclude that Daniels is not entitled to exempt status for the IRAs, but there was also sufficient evidence of concealment of same by Daniels. "Intent to conceal is a factual determination to be made by the bankruptcy court based upon the evidence and inferences drawn therefrom at trial." In re Wood, 291 B.R. at 226. Both the evidence and the reasonable inferences that could be drawn from that evidence showed an intent to conceal. First, in connection with a creditors' meeting on April 29, 2009, Daniels provided documentation and testimony indicating that the Profit Sharing Plan held two types of assets, neither of which were the IRAs. App. at 217-18. Second, Daniels sought to re-allocate funds from the Profit Sharing Plan into IRAs in his March 15, 2010 expedited motion for partial relief despite having already done so before the filing of his bankruptcy petition. Daniels I, 452 B.R. at 352. Third, it is undisputed that Daniels did not provide any documents disclosing the IRAs until March 2010 despite the fact that he initiated the bankruptcy proceedings in 2007. Id. at 344. Finally,

shortly after such production, Daniels, through counsel, purported to strike reference to one of the IRAs in answers to interrogatories.  Id. at 344-45.  There was more than sufficient basis to support the bankruptcy court's finding that these actions amounts to "a pattern of bad faith concealment."

To the extent that Daniels attempts to cast his actions or the actions on his behalf as inadvertence or a mistake that was immaterial to the Trust, such arguments are no more successful before this Court than they were before the bankruptcy court.  Although Daniels did state that the Profit Sharing Plan was "an IRA, qualified ERISA," at a creditors' meeting, that statement was made only in response to a question about whether he was the sole beneficiary of the plan and his characterization of the plan was not accurate, see D. 20 at 18,  and was too vague to disclose the existence of two IRAs that existed whole and apart from the Profit Sharing Plan.  Moreover, Daniels points to the Schedules that stated that the Profit Sharing Plan held a value of $748,179, a figure that included the value of the IRAs, to suggest that his failure to disclose the IRAs did not prejudice the Trustee.  It is hard to fathom that this would be so when the Bankruptcy Code depends upon full and truthful disclosures from any debtor so that the bankruptcy system can operate. The system "simply does not abide such dishonesty, no matter how minor the Debtor would have us believe the omission was." In re Harris, 385 B.R. 802, 805 (B.A.P. 1st Cir. 2008).  Moreover, the Trustee was prejudiced since Daniels's failure to disclose his assets unnecessarily prolonged the bankruptcy proceedings and needlessly forced the Trustee to expend time and energy investigating the true state of Daniels's assets.

Moreover, that the bankruptcy court allowed Daniels to amend his Schedules does not aid his argument that the bankruptcy court's findings are clearly erroneous.  Daniels moved to  amend the Schedules on April 7, 2011, a day before the hearing on the Trustee's first summary judgment

motion and approximately a year after the Trustee raised the issue of his nondisclosure of the IRAs in 2010.  D. 33 at 6. The following day, April 8, 2011, the bankruptcy court allowed the motion. Apart from the fact that Daniels apparently never filed any amended schedules after the allowance of this motion, D. 20 at 36, the bankruptcy court also did not make any finding in connection with this allowance of this motion that Daniels had not acted in bad faith.  That is, its later finding in its Memorandum of Decision on the summary judgment, issued on June 16, 2011, that Daniels had engaged in "a pattern of bad faith concealment" is in no way undercut by this earlier ruling in which bad faith was not even addressed.  Significantly, in that June 16, 2011 decision, the bankruptcy court noted that because its ruling barred Daniels from claiming the Profit Sharing Plan or IRAs as exempt, "amending his bankruptcy schedules would be of no consequence."  Daniels I, 352 B.R. at 352.

For all of these reasons, the bankruptcy court's finding that Daniels failed to disclose and concealed the IRAs was not clearly erroneous.[5]

### D.    The Bankruptcy Court's Denial of the Rule 60(b) Motion Was Not Error

The bankruptcy court also properly denied Daniels's motion for relief, pursuant to Fed. R. Civ. P. 60(b),  from its June 16, 2011 order granting summary judgment to the Trustee.  "'[R]elief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly.'"  Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 433 (1st Cir. 2005) (quoting Karak v.

---

[5]To the extent that Daniels's first appeal also appealed the bankruptcy court's denial of his motion to stay or to amend the discovery plan, those motions were also properly denied.  The motion to amend the discovery plan was properly denied where discovery had closed and the motion came after the bankruptcy court's order and judgment.  The motion to stay was also properly denied where Daniels failed to show a likelihood of success on the merits of this appeal.

Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002)).  Accordingly, "[w]e will not overturn denials

of such motions unless 'a miscarriage of justice is in  prospect or the record otherwise reveals a

manifest abuse of discretion.'" Id. (quoting Ruiz-Rivera v. Riley, 209 F.3d 24, 27 (1st Cir. 2002));

Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81 (1st Cir. 2008) (noting the standard of review

for the allowance or denial of motions to reconsider under Fed. R. Civ. P. 59(e) and 60(b)).

Neither the prospect of a miscarriage of justice is in the offing nor is there any suggestion

of a manifest abuse of discretion in the bankruptcy court's denial of the Rule 60(b) motion.  Here

and below, Daniels pointed to his assertions that he had alerted his prior counsel to certain errors

in his filings and the Schedules and claims both as the cause of excusable neglect and newly

discovered evidence warranting relief under Rule 60(b).  Daniels II, 462 B.R. at 362.

In another well crafted and thorough opinion, the bankruptcy court rejected Daniels's

argument and the relief he sought.  Specifically, he noted that there was no explanation of why

Daniels's new counsel had not raised the issue of Daniels's alleged lack of culpability in connection

with the earlier motion for summary judgment on the turnover motion, no reason why the court

should depart from the tenet that a client is bound by mistakes of his chosen counsel, no indication

that his allegedly "newly discovered" evidence was new to Daniels and, even if it were, such

evidence at a minimum suggests that Daniels knew that the Schedules were inaccurate and filed

them anyway. Id. at 10.

"[I]t is well settled that reliance upon advice of counsel is, in this context, no defense where

it should have been evident to the debtor that the assets ought to be listed in the schedules." In re

Tully, 818 F.2d at 111.  "A debtor cannot, merely by playing ostrich and burying his head deeply

enough in the sand, disclaim all responsibility for statements which he has made under oath." Id.

18

Such is certainly the case here, where Daniels,  a sophisticated business man, belatedly laid blame on his counsel after he had multiple opportunities himself during the bankruptcy proceeding to disclose the IRAs and did not.  There is nothing here to suggest that any neglect to bring this matter forward earlier was excusable or that the circumstances were "newly discovered" evidence to Daniels.  Accordingly, no exceptional circumstances exist here that warrant the extraordinary relief under Rule 60(b).

**E.      The Bankruptcy Court Did Not Err in Revoking Daniels's Discharge of His Debts**

Pursuant to 11 U.S.C. § 727(d)(1), a bankruptcy court may revoke a discharge if the "discharge was obtained through the fraud of the debtor and the requesting party did not know of such fraud until after the granting of [the] discharge."  Here, the bankruptcy court, upon the U.S. Trustee's motion, revoked the discharge of Daniels's debts.  Daniels III,Transcript at 10. Although Daniels defended against this action below by arguing that there had been no showing regarding Daniels's fraudulent intent, id. at 8-9, the bankruptcy court noted that it had made such findings indicative of fraudulent intent in the turnover action and that "the findings [of the bankruptcy court] made in the related case [regarding turnover] certainly support summary judgment in this one."  Id. Accordingly, the bankruptcy court relied upon its findings in Daniels I to conclude that Daniels had fraudulently concealed assets, namely the two IRAs.

Upon this record, the bankruptcy court did not err in revoking the discharge.   Again, In re Tully, 818 F.2d at 111 is instructive.  Where, as in In Re Tully, Daniels's actions constituted, at a minimum, reckless indifference to the truth, such is sufficient for denial of discharge or revocation of same.  Id.  Moreover, as in In re Tully, there was also evidence in this record regarding the intent to defraud on Daniels's part.  Id. at 112 n.6.

On appeal from the revocation ruling, Daniels again attacks the factfinding by the bankruptcy court regarding his nondisclosure and concealment.  For the same reasons discussed at length above, the Court rejects this attack.  The findings that Daniels did fail to disclose the existence of assets and endeavored to conceal same was solidly supported by the record before the bankruptcy court.  Moreover, unlike the poorly educated debtor with little business experience in In re Sendecky, 283 B.R. 760 (B.A.P. 8th Cir. 2002) upon which Daniels relies in which the appellate court affirmed the bankruptcy court's refusal to deny discharge, Daniels was a sophisticated business person in command of the management and administration of the Profit Sharing Plan who only belatedly blamed the nondisclosure of the IRAs on his counsel.

Moreover, applying the doctrine of collateral estoppel, Daniels was precluded from re-litigating the issue of his non-disclosure and concealment of the IRAs that was fully litigated in connection with the turnover motion in the later revocation of discharge matter.  As to the latter revocation proceeding, the issue to which the bankruptcy court applied issue preclusion–namely, the finding of nondisclosure and concealment–were the same that were involved in the turnover action which had been actually litigated, was determined by valid and binding final judgment, and the determination of that issue was essential to the previous judgment.  Accordingly, all of the criteria for issue preclusion were met,  Grella v. Five Cents Sav. Bank, 42 F. 3d 26, 30 (1st Cir. 1994); see, e.g.,  In re V&M Mgmt., Inc., 321 F.3d 6, 8 (1st Cir. 2003), and the bankruptcy court properly precluded Daniels from relitigating the issue.

For all of these reasons, the bankruptcy court did not err in revoking the discharge.

## VI.     Conclusion

For the reasons stated above, the orders of the bankruptcy court in Daniels I, Daniels II and

Daniels III, which Daniels now appeals in  Nos. 11-cv-11688-DJC, 12-cv-10360-DJC and 12-cv-

10364-DJC, now consolidated, are AFFIRMED.[6]   Accordingly, each of these appeals is

DISMISSED.

      **So ordered.**

                                          /s/ Denise J. Casper
                                          United States District Judge

---

[6]To extent that in these appeals from the bankruptcy court's rulings on the summary judgment, Rule 60(b) motion and revocation of discharge, Daniels is also appealing that court's denial of his various motions to reconsider these rulings, the Court affirms the denial of same because, for all of the reasons stated above, there has been no showing of "manifest abuse of discretion." Ruiz Rivera, 521 F.3d at 81.